UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK ANTHONY GONZALES,<br><br>              Plaintiff,<br><br>       v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>              Defendant. | Case No. 1:26-cv-01404-JLT-EPG<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY BE AFFIRMED<br><br>(ECF Nos. 1, 10).<br><br>FOURTEEN (14) DAY DEADLINE |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for supplemental security income benefits. *See* 28 U.S.C. § 636(b)(1)(B) (providing for issuance of proposed findings of fact and recommendations); Local Rule 302(c)(15) (referring final social security decisions for findings and recommendations).

Plaintiff presents the following issues for decision:

1. Whether the ALJ provided clear and convincing reasons for discounting Plaintiff's allegations of visual symptoms and mental impairments.

2. Whether the ALJ properly assessed Plaintiff's mental and physical residual

functional capacity ("RFC"); and

3.  Whether the ALJ fully developed the record.

(ECF No. 12 at 14[1]). Having reviewed the record, administrative transcript, parties' briefs, and the applicable law, the Court recommends as follows.

## I.    ANALYSIS

### a.  Discounting Plaintiff's allegations

Plaintiff first argues that the ALJ failed to offer specific, clear and convincing reasons for discounting his allegations of mental dysfunction and visual symptoms. (ECF No. 12 at 15, 18). Defendant argues that the ALJ provided reasoning that reasonably discounted Plaintiff's allegations. (ECF No. 14 at 3). Plaintiff's reply maintains his argument that the ALJ's reasoning was not specific, clear, and convincing. (ECF No. 15 at 2).

> As to a plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:
> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996).

However, "[t]he standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). An ALJ's reasoning as to subjective testimony "must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995); *see Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Accordingly, our next task is to determine whether the ALJ's adverse credibility finding of

---

[1] Page cites refer to the blue page numbers provided by CM/ECF.

Carmickle's testimony is supported by substantial evidence under the clear-and-convincing standard.").

After considering the parties' arguments and applicable legal standards, the Court will recommend finding that the ALJ provided legally sufficient reasons to discount Plaintiff's allegations of mental symptoms and visual impairments.

The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 17). Accordingly, because there is no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's symptom testimony.

Here, the ALJ concluded that Plaintiff's allegations were not entirely consistent with the medical evidence and other evidence in the record, and provided the following reasoning:

> With respect to the claimant's low vision, the claimant was shot in the face with a shotgun in 2018, and since that time has no vision in his right eye and reduced vision in his left eye (Ex. 2F at 23; Ex. 5F at 184). Vision exams in 2023 confirmed the claimant had no light perception from his right eye and the vision in his left eye was measured at 20/70 to 20/80+ (Ex. 5F at 185; Ex. 9F at 45; Ex. 11F at 363, 412). Subsequent ophthalmology appointment did not indicate any worsening in his vision (Ex. 12F at 57). The claimant also testified he is not undergoing any current treatment for his vision, nor is he prescribed any medications (hearing testimony). As such, the undersigned has accommodated for the claimant's low vision by limiting the claimant to jobs that do not require binocular vision or depth perception; no climbing of ladders, ropes, or scaffolds; no work at heights or around dangerous moving machinery; requires larger print for reading; and cannot drive for work.
>
> With respect to the claimant's anxiety disorder, bipolar disorder, PTSD, and ADHD, since the claimant's gunshot wound in 2018, he has experienced an exacerbation of his anxiety (Ex. 3F at 6). The claimant has complained of difficulty controlling worry, irritability, difficulty sitting still, panic attacks and shortness of breath, chest tightness, hopelessness, fatigue, recurrent memories, paranoia, and issues sleeping (Ex. 3F at 94; Ex. 10F at 40-41). He has also endorsed experiencing little interest or pleasure in doing things, feeling bad about himself, having decreased impulses with his finances, racing or rapid thoughts, distractibility, and a labile mood fluctuating from depression to elevated mood (Ex. 3F at 25, 79; Ex. 10F at 52; Ex. 13F at 14). Despite this, the claimant has acknowledged that his prescribed medication improves his symptoms (Ex. 2F at 16, 19). He has also been generally noted to be pleasant and cooperative during exams and evaluations, has intact memory and concentration, and is generally considered to have adequate grooming and hygiene (Ex. 1F at 3; Ex. 2F at 10, 26; Ex. 3F at 19, 73, 76, 107, 129, 142; Ex. 4F at 10,

26; Ex. 5F at 181; Ex. 10F at 10, 28, 48, 79, 97; Ex. 13F at 84, 99). As such, the undersigned has accommodated for the claimant's anxiety disorder, bipolar disorder, PTSD, and ADHD by limiting the claimant to work involving simple instructions and can tolerate occasional contact with the public.

(A.R. 17-18).

Next, the ALJ explained why the record did not support Plaintiff's statements regarding the intensity, persistence, and limiting effects of these symptoms. (A.R. 17). The ALJ noted that the Plaintiff's claims of low vision are the result of being shot in the face with a shotgun in 2018, and since that time, Plaintiff claims he has no vision in the right eye with reduced vision in the left eye. (*Id.*). Additionally, Plaintiff stated he had experienced a worsening of his anxiety following the gunshot wound in 2018. (A.R. 18). Specifically, Plaintiff claimed "difficulty controlling worry, irritability, difficulty sitting still, panic attacks and shortness of breath, chest tightness, hopelessness, fatigue, recurrent memories, paranoia, and issues sleeping" and Plaintiff stated he had "little interest or pleasure in doing things, feeling bad about himself, having decreased impulses with his finances, racing or rapid thoughts, distractibility, and a labile mood fluctuating from depression to elevated mood. (A.R. 18). With respect to Plaintiff's allegations of worsening anxiety, the ALJ stated

> [T]he claimant has acknowledged that his prescribed medication improves his symptoms (Ex. 2F at 16, 19). He has also been generally noted to be pleasant and cooperative during exams and evaluations, has intact memory and concentration, and is generally considered to have adequate grooming and hygiene (Ex. 1F at 3; Ex. 2F at 10, 26; Ex. 3F at 19, 73, 76, 107, 129, 142; Ex. 4F at 10, 26; Ex. 5F at 181; Ex. 10F at 10, 28, 48, 79, 97; Ex. 13F at 84, 99).

(A.R. 18). As such, ALJ stated that more extensive limitations were not warranted for Plaintiff's allegations of worsening anxiety.

The ALJ properly relied on the lack of supporting objective medical evidence, as one reason, to discount Plaintiff's allegations of low vision and worsening mental symptoms. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

As the ALJ noted, at the hearing and in the record, while Plaintiff complained of no vision

4

in his right eye and low vision in his left eye, such that he required someone to be present when ambulating and he was unable to travel to his neighborhood alone, vision examinations conducted in 2023 and after did not show worsening vision. (A.R. 2684).  These examinations determined Plaintiff's remaining vision to be 20/80+, which discounts Plaintiff's allegations of no vision. (A.R. 17). Also, Plaintiff stated he was not undergoing any current eye treatment to treat the allegations of pain he was experiencing. Moreover, when Plaintiff arrived at an appointment with a psychological consultative examiner, he was observed to arrive without assistance and did not demonstrate movement typically associated with an individual who would be considered legally blind. (A.R. 1192, 1194). The ALJ properly discounted Plaintiff's claims regarding his vision as being inconsistent with statements from State agency physicians. *Kitchen v. Kijakazi*, 82 F.4th 732, 739 (9th Cir. 2023) (*citing Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1161 (9th Cir. 2008)). Notably, these same physicians assessed *less* restrictive limitations than the ALJ did, because the ALJ included limitations to climbing and driving, which state agency physicians did not. (A.R. 54-56, 93-94, 106-07).

Looking next at Plaintiff's statements about the severity of his mental health symptoms, the ALJ explained that Plaintiff's mental health examinations displayed an individual who was pleasant and cooperative, which is inconsistent with his claims of difficulty with social interactions. (A.R. 14, 18, citing A.R. 635, 709, 792, 896, 1102, 1281, 2347). Additionally, Plaintiff's mental status examination showed normal mood and affect, polite and cooperative behavior, an appropriate level of social cueing, and appropriate responses to conversational bantering, which are also inconsistent with Plaintiff's own description of his symptoms. A.R. 1196-1198. The ALJ's properly noted this inconsistency in assessing Plaintiff's statements.

The ALJ also appropriately discounted Plaintiff's claims of difficulties sleeping and regulating his mood as a result of his mental symptoms because Plaintiff stated that his medications provided good control of his symptoms and improved his general affect. (A.R. 18). In other words, with the appropriate use of his medication, Plaintiff claimed that his general mood and sleep improved.

Plaintiff argues that ALJ did not adequately explain how the record of evidence was

5

inconsistent with Plaintiff's allegations, and that the record was actually *consistent* with Plaintiff's claims. (ECF No. 12 at 16-20). Additionally, the ALJ limited its analysis to isolated treatment notes, when overall there was "plenty of evidence of ongoing mental dysfunction." (ECF No. 15 at 3). However, the Court declines to reweigh evidence considered by the ALJ. It only looks to whether there is "substantial evidence" supporting the ALJ's reasoning. 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (explaining that substantial evidence is "more than a mere scintilla," and "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotation omitted). Even where the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005).

Thus, the Court recommends finding that the ALJ provided legally sufficient reasons for discounting Plaintiff's symptom testimony.

### b. RFC

Plaintiff next argues that the ALJ failed to properly account for Plaintiff's mental impairments when formulating the RFC. (ECF No. 12 at 21). Plaintiff further argues the ALJ failed to account for Plaintiff's visual limitations when formulating the RFC. (*Id.* at 22).

In response, Defendant argues that the ALJ appropriately found the record did not demonstrate a need for further mental limitations than included in the RFC. (ECF No. 14 at 9). Defendant also argues that Plaintiff's physical RFC was properly assessed and demonstrated no need for further limitations. (*Id.* at 10).

A claimant's RFC is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks and citations omitted).

In reviewing findings of fact with respect to RFC assessments, this Court determines whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal citation omitted).

ALJs must also evaluate medical opinions under certain guidelines for claims filed on or after March 27, 2017. 20 C.F.R. §§ 404.1520c, 416.920c. (A.R. 17). These regulations set "supportability" and "consistency" as "the most important factors" when determining an opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assignment of specific "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).  Moreover, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). In conjunction with this requirement, "[t]he agency must 'articulate . . .. how persuasive' it finds 'all the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(2)." *Woods*, 32 F.4th at 792.

After considering the parties' arguments and applicable legal standards, the Court will recommend finding that the RFC was supported by substantial evidence.

The ALJ assessed the following RFC:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant cannot work in jobs that require binocular vision or depth perception; no climbing of ladders, ropes, or scaffolds; no work at heights or around dangerous moving machinery; requires larger print for reading; cannot drive for work; can perform work involving simple instructions and can tolerate occasional contact with the public.

(A.R. 17).

Here, the ALJ properly relied, in part, upon medical clinical findings from State agency physicians when determining Plaintiff's RFC. Specifically, regarding Plaintiff's visual limitations, the ALJ determined as follows:

> The claimant's physical health records were evaluated by Robert McGuffin, M.D., on May 14, 2023, as part of the initial determination (Ex. 1A at 18; Ex. 2A at 18). On reconsideration they were evaluated by Dr. Lane, on March 7, 2024 (Ex. 6A at 11; Ex. 7A at 11). Dr. McGuffin determined the claimant was limited to visual limitations and should avoid all exposure to fumes, odors, dusts, gasses, poor ventilation, and hazards such as machinery or heights (Ex. 1A at 1718; Ex. 2A at 17-18). Dr. Lane determined the claimant was limited avoiding occupations requiring binocular vision, will need larger print to read with the left eye, and should avoid concentrated exposure to hazards such as machinery or heights (Ex. 6A at 10-11; Ex. 7A at 1011).
>
> The undersigned finds the determination provided by Dr. McGuffin to be unpersuasive. Dr. McGuffin did not support the determination with reference to any specific evidence in the record, nor is his determination consistent with the longitudinal record which shows the claimant's vision to be more restricted (Ex. 5F at 185; Ex. 9F at 45; Ex. 11F at 363, 412; Ex. 12F at 57).
>
> The undersigned finds the determination provided by Dr. Lane to be persuasive. Dr. Lane supported the determination with reference to specific evidence in the record such as the vision exam results and claimant's reported history (Ex. 6A at 11; Ex. 7A at 11). Dr. Lane's determination is also consistent with the longitudinal record showing the claimant's vision impairment (Ex. 5F at 185; Ex. 9F at 45; Ex. 11F at 363, 412; Ex. 12F at 57). As such, the *undersigned adopts the limitations determined by Dr. Lane but also adopts more restrictive postural and vision limitations that are in line with the documented extent of the claimant's impairments, and his allegations (hearing testimony).*

(A.R. 18-19). (emphasis added). Accordingly, the ALJ provided *more restrictive* limitations in the RFC than Dr. Lane opined. To the extent that Plaintiff argues that the ALJ erred by not fully adopting Dr. Lane's proposed limitations, "such additional restrictions only benefitted plaintiff, making any error in that regard harmless." *Herrera v. Colvin*, No. ED CV 13-1734-SP, 2014 WL 3572227, at *6 (C.D. Cal. July 21, 2014). Additionally, while Plaintiff may draw a different conclusion from the findings, that does not mean the ALJ erred merely because "the ALJ could have come to a different conclusion." *Shaibi v Berryhill,* 870 F.3d 874, 879-80 (9th Cir. 2017).

Next, when determining Plaintiff's mental RFC, contrary to Plaintiff's argument that the ALJ omitted work restrictions from the RFC that would adequately account for the limiting effects of Plaintiff's anxiety and bipolar disorder, PTSD, and ADHD, the ALJ looked at the entire

8

record in making his determinations. *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022). Notably, when considering the prior medical onions and administrative medical findings, the ALJ explained:

> A mental evaluation by a psychologist was performed by consultative examiner (CE) Gil Schmidt, Psy.D., on April 29, 2023 (Ex. 8F). Dr. Schmidt interviewed the claimant and performed a mental status exam as part of the evaluation (Ex. 8F). Dr. Schmidt opined the claimant had no functional impairments (Ex. 8F at 9). *The undersigned finds the opinion provided by Dr. Schmidt to be unpersuasive.* Although Dr. Schmidt supported his opinion with the underlying examination, his opinion *is not consistent with the longitudinal record which shows the claimant to have multiple severe mental health impairments* (Ex. 1F at 3; Ex. 2F at 10, 26; Ex. 3F at 19, 73, 76, 107, 129, 142; Ex. 4F at 10, 26; Ex. 5F at 181; Ex. 10F at 10, 28, 48, 79, 97; Ex. 13F at 84, 99).
>
> The claimant's medical record was also reviewed by state agency medical consultants. The undersigned has considered the opinions of those consultants regarding the claimant's mental and, or physical capacity to perform work-related functions.
>
> The claimant's mental health records were evaluated by Sallie Boulos-Sophy, Ph.D., on May 16, 2023, as part of the initial determination (Ex. 1A at 12; Ex. 2A at 12-13). On reconsideration they were evaluated by Myles Friedland, Ph.D., on March 31, 2024 (Ex. 6A at 8; Ex. 7A at 8). *Dr. Boulos-Sophy and Dr. Friedland both determined the claimant's mental health impairments were non-severe* (Ex. 1A at 12; Ex. 2A at 12-13; Ex. 6A at 8; Ex. 7A at 8).
>
> The undersigned finds the determinations provided by Dr. Boulos-Sophy and Dr. Friedland to be unpersuasive. *Although both determinations were supported with reference to specific evidence in the record such as the lack of mental health treatment records, the CE report, and lack of suicidal/homicidal ideation or hallucinations, neither determination is consistent with the longitudinal record which shows claimant to have multiple severe mental health impairments* (Ex. 1F at 3; Ex. 2F at 10, 26; Ex. 3F at 19, 73, 76, 107, 129, 142; Ex. 4F at 10, 26; Ex. 5F at 181; Ex. 10F at 10, 28, 48, 79, 97; Ex. 13F at 84, 99).

(A.R. 16). Thus, the ALJ imposed significant limitations with regards to Plaintiff's mental symptoms. Additionally, to the extent that the ALJ varied her decision from the opinions of the medical providers, she did so by *imposing additional limitations* in the RFC and thus any error *favored* Plaintiff.

Additionally, in reaching the mental RFC determination, the ALJ relied in part on Plaintiff's own testimony as well as prior interactions during mental health examinations, where Plaintiff was noted to be pleasant and cooperative, and displayed adequate grooming and hygiene.

Moreover, Plaintiff's own testimony that his medications improved his mental health lent further support to the ALJs reasoning. (A.R. 18).

For the reasons given above, the Court recommends finding that the RFC was adequately supported by substantial evidence.

### c. Fully Developed Record

Plaintiff also argues the ALJ failed to develop the record and improperly served as her own medical expert. (ECF No. 12 at 24). Specifically, Plaintiff contends that the ALJ rejected one medical opinion and two prior administrative medical findings regarding Plaintiff's mental functional capacity and relied upon her own lay opinion for interpretation. As such, Plaintiff argues that the ALJ should have ordered a new consultative examination or consulted with a medical expert at the administrative hearing. (ECF No. 12 at 24, 25).  Additionally, Plaintiff argues that the ALJ did not order a consultative examination to assess Plaintiff's visual limitations and instead relied on a prior medical administrative finding after being advised by Plaintiff's hearing representative stated that no updated ophthalmological consultative examination was available. (ECF No. 12 at 25).

Defendant argues that the ALJ was not required to order additional examinations because there was no ambiguity or inadequacy in the record because the record contained medical evidence from mental health, family medicine, eye care, prison, and emergency treatment providers from 2022 to July 2025, which covered almost the entire period under review. (ECF No. 14 at 11, citing A.R. 633-1184, 1203-2673).

An ALJ has a duty to develop the record for represented and unrepresented claimants, with the duty being "heightened where the claimant may be mentally ill and thus unable to protect her own interests." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Although the ALJ must properly develop the record, a claimant has the burden of proving that she is disabled. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("The claimant carries the initial burden of proving a disability in steps one through four of the

analysis.").

Moreover, "ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir 2022)). However, the Ninth Circuit has also found that an ALJ may not draw his or her own conclusions about medical evidence not subject to lay interpretation without the assistance of a medical record. *See Rondan v. Halter*, 8 Fed. App'x. 724, 725 (9th Cir. 2001) (unpublished) (Instead of requesting a supplemental medical opinion that included consideration of the MRIs, the ALJ drew his own conclusions about the MRIs. The lack of a medical opinion that included consideration of the MRIs, and the fact that the RFC determination was made without consideration of Rondan's medical records, triggered the ALJ's duty to further develop the record.").

After considering the parties' arguments and applicable legal standards, the Court recommends finding that the ALJ adequately developed the record.

As Defendant notes, the record contained ample information from the relevant period. Further, as Defendant argues, the record before the AJ was not ambiguous or inadequate to allow proper evaluation of the claims. The ALJ relied on medical evidence within the record, which included vision examinations, mental examinations that demonstrated largely normal findings, especially with medications, and Plaintiff's own testimony and function report. (*See* A.R. AR 49, 54-56, 70, 75-77, 91, 93-94, 104, 106-17 465-66, 635, 699, 702, 709, 744, 748, 792, 861, 896, 912, 1102, 11-6, 1192-1200, 1274, 1281, 1350, 1368, 1752, 2145, 2347).

Moreover, Plaintiff fails to point to any specific evidence that would require medical expertise to interpret. On the contrary, the medical evidence cited by the ALJ is capable of being understood without medical expertise, such as the record noting that Plaintiff "has also been noted to be pleasant and cooperative during exams and evaluations, has intact memory and concentration, and is generally considered to have adequate grooming and hygiene." (A.R. 18).

While Plaintiff argues that other parts of the record, such as some of Plaintiff's vision findings stemming from a gynecologist (ECF No. 12 at 24), support a different conclusion, such records do not trigger a requirement to consult with a medical expert.

11

As such, the Court recommends finding that the ALJ adequately developed the record.

## II.   CONCLUSION AND RECOMMENDATIONS

Accordingly, based on the foregoing, IT IS RECOMMENDED that:

1.   The decision of the Commissioner of the Social Security Administration be affirmed; and

2.   The Clerk of Court be directed to enter judgment in favor of Defendant and to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **July 9, 2026**                    /s/ Erica P. Grosjean

UNITED STATES MAGISTRATE JUDGE

12